UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GILBERTO JUAREZ,

        Petitioner,

                                    CASE NO. 2:06-CV-15414
v.                                 HONORABLE ARTHUR J. TARNOW

JERI ANN SHERRY,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS

I.      Introduction

Michigan prisoner Gilberto Juarez ("Petitioner") has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights. Petitioner was convicted of two counts of second-degree murder, two counts of assault with intent to murder, and possession of a firearm during the commission of a felony following a joint jury trial with co-defendant Bilal Chaaban in the Wayne County Circuit Court. He was sentenced to concurrent terms of 20 to 45 years imprisonment on the murder and assault convictions and a consecutive term of two years imprisonment on the felony firearm conviction in 2004.

In his pleadings, Petitioner raises claims concerning the sufficiency of the evidence and the prosecution's failure to timely provide discovery. For the reasons set forth, the Court denies the petition for writ of habeas corpus.

II.   Facts

Petitioner's convictions arise from a shooting at a home in Detroit, Michigan on April 13, 2003. The Michigan Court of Appeals set forth the relevant facts, which are presumed correct on habeas review, *see Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 Fed. Appx. 730 (6th Cir. 2002), as follows:

> The prosecution arose out of the murders of Angela Ciazza and Lowell Clark. During the early morning of April 13, 2003, defendant Chaaban was walking home following a night of drinking with defendant Juarez when he encountered Ciazza who was taking a walk in a neighborhood park near her home. An altercation ensued. When the exchange became loud, James Duprie ran out of Ciazza's home toward defendant Chaaban and Ciazza. Ciazza stated that defendant Chaaban tried to attack her and Duprie began punching defendant Chaaban. There is conflicting testimony regarding whether Clark was also involved in the fight at the park. Defendant Chaaban ran away from the park and used his cellular phone to call defendant Juarez. Defendant Chaaban told defendant Juarez that he had been attacked by gang members and asked him to bring him a gun. At trial, defendant Chaaban testified that he had been beaten in June 2002 by Clark and other gang members and that he was fearful for his home and family.
>
> Defendant Juarez picked up defendant Chaaban in his truck and provided him with an AK47 assault rifle. Defendants drove to the street where Ciazza lived. Ciazza, Duprie, and Clark were on the porch talking loudly which prompted Jessica Clark, the babysitter for Ciazza's twin babies, to exit the house and come outside. Defendants arrived at the house, some words were exchanged, and Ciazza threw a bottle at the truck. Defendant Chaaban got out of the truck with the gun and when he reached the sidewalk, he shot at the door of the house. Ciazza said she was shot, and she, Duprie, Clark, and Jessica Clark ran into the house. Defendant Chaaban followed. Duprie and Clark ran into the basement. Jessica Clark initially hid in the kitchen and saw defendant Chaaban walk by and proceed downstairs into the basement. Defendant Chaaban entered the basement and shot Lowell who had tried to hide under the stairs and shot Ciazza's dog. Duprie stayed hidden behind a washer. Jessica Clark ran upstairs and hid in a closet. Defendant Chaaban then walked back up the stairs and fired more shots, one of which traveled through the floor and hit the wall near the washer where

>Duprie remained hiding. Defendant Chaaban then left the house carrying the gun, got back in defendant Juarez's truck, and defendant Juarez drove away with the lights off. The police and EMS arrived at the scene and found Ciazza dead on the main floor of the house and Lowell dead in the basement.
>
>Defendant Juarez dropped off defendant Chaaban and drove home. Defendant Chaaban called his friend Roberto Castillo who met up with defendant Chaaban at a laundry mat and walked with him to a nearby motel where defendant Chaaban remained for a few hours. In the morning, Castillo, and Mouad Shohatee, another friend of defendant Chaaban, threw the gun and four clips of ammunition into a dumpster. Defendant Chaaban maintained to his friends that he had been jumped and that he had to shoot in self-defense because his attackers knew where he lived. Castillo and Shohatee talked to defendant about turning himself in to the police.
>
>An autopsy revealed that Ciazza died as a result of two gun shot wounds and found evidence of close range firing. Lowell's cause of death was also multiple gunshot wounds, and the autopsy revealed five gunshot wounds in total. There was no evidence of close range firing on Lowell.

*People v. Juarez*, No. 253751, 2005 WL 711764, *1-2 (Mich. Ct. App. March 29, 2005) (unpublished).

III.    Procedural History

Following his convictions and sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals raising several claims, including those contained in the present petition. The Michigan Court of Appeals affirmed his convictions. *Id*. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Juarez*, 474 Mich. 906, 705 N.W.2d 124 (2005).

Petitioner, through counsel, thereafter filed his federal habeas petition, raising the following claims:

> I. Petitioner's convictions are a denial of his constitutional right to due process where the evidence was insufficient to support the verdicts of guilty of second-degree murder or assault with intent to commit murder.
>
> II. The prosecution's failure to timely comply with discovery denied Petitioner his constitutional right to a fair trial.

Respondent has filed an answer to the petition contending that it should be denied for lack of merit.

IV. <u>Analysis</u>

    A. <u>Standard of Review</u>

Federal law imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

4

B.  Insufficient Evidence Claim

Petitioner first asserts that he is entitled to habeas relief because the prosecution failed to present sufficient evidence to support his second-degree murder and assault with intent to murder convictions. Specifically, Petitioner claims that there was insufficient evidence to convict him of those offenses because the prosecution failed to prove that he had the requisite intent to kill.

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the United States Supreme Court established that the standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. The Court must view this standard through the framework of 28 U.S.C. § 2254(d). *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). This standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16. When applying this standard, a habeas court does not reweigh the evidence or redetermine the credibility of the witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003). "It is the province of the fact-finder to weight the probative value of the evidence and resolve any conflicts in testimony." *Id*. Therefore, "[t]he mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Id*. (citations omitted).

Under Michigan law, the common law crime of murder is defined as second-degree murder and is punishable by up to life imprisonment. Mich. Comp. L. § 750.317. Second-

5

degree murder is the unjustified and unexcused killing of a human being with malice. Conviction of second-degree murder requires proof of the following elements: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *See People v. Goecke*, 457 Mich. 442, 463-64, 579 N.W.2d 868 (1998). To prove malice, the prosecution must establish that the defendant has the intent to kill or do great bodily harm, or has created and disregarded a very high risk of death. *Id*. at 466; *see also People v. Dykehouse*, 418 Mich. 488, 495, 345 N.W.2d 150 (1984). "The facts and circumstances of the killing may give rise to an inference of malice .... A jury may infer malice from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm." *People v. Carines*, 460 Mich. 750, 757, 597 N.W.2d 130, 135 (1999) (internal quotation omitted). Malice may also be inferred from the use of a deadly weapon. *Id.*

A conviction for assault with intent to murder requires proof beyond a reasonable doubt that the defendant committed: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v. Hoffman*, 225 Mich. App 103, 111, 570 N.W.2d 146 (1997); Mich. Comp. L. § 750.83. Circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *see People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993); *People v. Plummer*, 229 Mich. App. 293, 299, 581 N.W.2d 753 (1998), including a defendant's intent or state of mind. *See People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31 (1997).

To convict a defendant under an aiding and abetting theory, the prosecution must establish that the crime was committed by the defendant or some other person, that the defendant performed acts or gave encouragement which aided or assisted in the commission of the crime, and that the defendant either intended to commit the crime or knew that the principal intended to commit the crime at the time he gave the aid or encouragement. *Carines*, 460 Mich. at 759. An aider and abettor's state of mind may be inferred from all the facts and circumstances. *Id*.

Applying the *Jackson* standard, the Michigan Court of Appeals concluded that the prosecution presented sufficient evidence to support Petitioner's convictions for second-degree murder and assault with intent to commit murder under an aiding and abetting theory. The court explained in relevant part:

> In the present case, the evidence, viewed in a light most favorable to the prosecution, is sufficient to support a second-degree murder conviction. The evidence clearly showed that defendant Juarez supplied codefendant Chaaban with the AK47 and ammunition used in the shootings, drove him to the scene of the crime, watched him shoot at the door of the house, observed him enter the house in pursuit of the victims with the gun, waited for him to return to the vehicle, fled the scene, and then dropped him off. This evidence, viewed in a light most favorable to the prosecution, is sufficient to establish malice, as there was an intent to kill, to cause great bodily harm, or to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm through codefendant Chaaban's act of shooting the victims. These acts establish defendant's participation as an aider or abettor in the crime of second-degree murder. Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational jury could find that the essential elements of second-degree murder on an aiding and abetting theory were proved beyond a reasonable doubt.
>
> Further, the evidence, viewed in a light most favorable to the prosecution, is sufficient to support convictions for assault with intent to commit murder.

> \* \* \*
> Defendant Juarez argues that the evidence negates any intent to kill on his part. To the contrary, viewing the evidence in the light most favorable to the prosecution, we conclude that defendant Juarez had an intent to kill when he provided codefendant Chaaban with an AK47, ammunition, drove codefendant Chaaban to the scene of the crime, and watched him exit the vehicle shooting. Thus, defendant Juarez's knowledge that codefendant Chaaban intended to shoot and kill the victims can be inferred beyond a reasonable doubt.

*Juarez*, 2005 WL 711764 at \*7.

This decision is neither contrary to *Jackson* nor an unreasonable application of the law or the facts. The evidence presented at trial revealed that Petitioner was aware that co-defendant Chaaban had an altercation with one or more of the victims, that Petitioner provided Chaaban with an AK-47 assault rifle, that Petitioner drove Chaaban to confront the victims, that Petitioner waited for Chaaban and drove him away from the scene of the shooting. The trial testimony further indicates that co-defendant Chaaban used the AK-47 assault weapon to shoot at the door of the house striking one victim, and that he then followed all four victims into the house and fired multiple shots killing two of the victims. Such evidence was sufficient to support Petitioner's convictions of two counts of second-degree murder and two counts of assault with intent to commit murder as an aider and abettor. Petitioner's knowledge of the situation between the parties and his conduct in providing co-defendant Chaaban with an assault rifle and driving him to and from the shooting, combined with Chaaban's actions during the shooting, establishes the requisite malicious intent and the requisite assistance to support his convictions.

Petitioner's insufficiency of evidence claim attacks the inferences that the jury drew from the testimony at trial. Such determinations, however, are not matters for federal habeas review.

"A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983). It is the job of the jury, not a federal habeas court, to resolve evidentiary conflicts. *See Jackson*, 443 U.S. at 326; *Martin*, 280 F.3d at 618. Given the testimony at trial, the Court concludes that the state court's decision that a rational trier of fact could find the essential elements of second-degree murder and assault with intent to commit murder beyond a reasonable doubt was reasonable. Habeas relief is not warranted.

    C.    <u>Discovery Claim</u>

Petitioner also asserts that he is entitled to habeas relief because the prosecution failed to timely provide him with discovery. Specifically, he claims that the prosecution failed to timely disclose transcripts of witness Stacey Longrie's pre-trial testimony which had been given pursuant to an investigative subpoena.

The Michigan Court of Appeals denied relief on this claim, stating as follows:

> Defendant Juarez asserts that the prosecution withheld an important piece of evidence when it did not provide the transcripts of witness Stacey Longrie's pre-trial testimony pursuant to an investigative subpoena. A criminal defendant's due process rights to discovery may be implicated if the defendant served a timely request on the prosecution and material evidence favorable to the accused is suppressed, or the defendant made only a general request for exculpatory information or no request and exculpatory evidence is suppressed. *People v. Tracey*, 221 Mich App 321, 324; 561 NW2d 133 (1997). Suppression by the prosecution of evidence requested by and favorable to the accused violates due process if the evidence is material to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *People v. Banks*, 249 Mich App 247, 254-255; 642 NW2d 351 (2002). "Undisclosed evidence is material only if there

is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *People v. Lester*, 232 Mich App 262, 282; 591 NW2d 267 (1998). "A 'reasonable probability' is 'a probability sufficient to undermine confidence in the outcome.' " *Id*.

A review of the record reveals that the prosecutor apparently could not find Longrie at the start of trial, however, was able to locate her in the middle of trial. At that point it was discovered that the discovery packet provided to the defense prior to trial included a statement written by Longrie but did not include eighteen pages of testimony given pursuant to an investigative subpoena. The prosecutor stated that it was an inadvertent omission. The trial court ruled that the prosecutor could not use the prior testimony in any way during trial including impeachment or rehabilitation. Longrie did testify at trial, and the record reflects that the prosecutor provided Longrie's pre-trial testimony given pursuant to the investigative subpoena to the defense sometime before Longrie left the witness stand.

Although there appears to have been a discovery violation, we find no error requiring reversal. The evidence at issue was disclosed to the defense during trial and the trial court prohibited the prosecution from using the testimony during trial. Defendant Juarez's complaint is therefore not that the evidence was not disclosed, but instead that it was not timely disclosed. In light of the strength of the evidence in this case as discussed above, we cannot conclude that had the evidence at issue been earlier disclosed, there is a reasonable probability that the result of the proceeding would have been different. *Banks, supra*, 249 Mich App 255.

Moreover, when determining the appropriate remedy for discovery violations, the trial court must balance the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for noncompliance. *Banks, supra*, 249 Mich App 252. The trial court appropriately balanced these interests in providing defendant Juarez a remedy for the undisclosed evidence when the court did not allow the evidence to be used for any purpose at trial. Any discovery violation appears to have been inadvertent and was cured during trial. We cannot conclude that the delayed disclosure of the evidence at issue rendered the trial fundamentally unfair.

*Juarez*, 2005 WL 711764 at *7-8.

Having reviewed the matter, this Court finds that the Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts. First, to the extent that Petitioner alleges a violation of the trial court's discovery order, he is not entitled to habeas relief. A federal habeas court may only grant habeas relief to a person who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Trial court errors in the application of state procedure or evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Thus, any claim by Petitioner that the prosecution violated the trial court's discovery order does not provide a basis for habeas relief and must be denied. *See Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002).

Moreover, Petitioner has failed to establish a violation of his federal constitutional rights. It is well-settled that there is no general constitutional right to discovery in a criminal case. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988). The United States Supreme Court has held that the prosecutor's failure to disclose evidence favorable to the defense constitutes a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). In other words, to find a *Brady* violation, not only must the evidence be suppressed, but the suppressed evidence must be material and favorable to the accused. *Elmore v. Foltz*, 768 F.2d 773, 777 (6th Cir. 1985).

11

Juarez v. Sherry
2:06-CV-15414
Page 12 of 13

Favorable evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985); *see also Kyles v. Whitley*, 514 U.S. 419, 432-36 (1995). The duty to disclose favorable evidence includes the duty to disclose impeachment evidence. *Bagley, supra*; *Giglio v. United States*, 405 U.S. 150, 154-55 (1972). Material evidence is that which is "so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce." *United States v. Clark*, 988 F.2d 1459, 1467 (6th Cir. 1993).

A *Brady* violation does not occur if previously undisclosed evidence is disclosed during trial unless the defendant is prejudiced by its prior non-disclosure. *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986); *see also Edkin v. Travis*, 969 F. Supp. 139, 143 (W.D.N.Y. 1997) (*Brady* violation did not occur when defense counsel ultimately received the materials and had an opportunity to prepare for cross-examination).

In this case, the witness's pre-trial testimony was disclosed during trial, and Petitioner has not established that those transcripts constituted an unfair surprise or that he was prejudiced in presenting a defense by the delay in disclosure. Furthermore, while the witness's testimony was relevant and material, it was not favorable to the defense. *Brady* was thus not violated by the prosecution's late disclosure of the witness's pre-trial testimony transcripts. There is also no indication that the prosecution intentionally withheld the transcripts. Lastly, the state trial court took appropriate corrective measures at the time of trial to minimize any potential prejudice to

Petitioner by ensuring that the defense had access to the witness's pre-trial testimony transcripts and by not allowing the prosecution to utilize those transcripts during trial. Given such circumstances, the Court cannot conclude that the prosecution's conduct violated Petitioner's constitutional rights or deprive him of a fundamentally fair trial. Habeas relief is not warranted.

V.      Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented in his petition.

Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED**.


s/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge

Dated:  November 24, 2008


I hereby certify that a copy of the foregoing document was served upon counsel of record on November 24, 2008, by electronic and/or ordinary mail.

s/Catherine A. Pickles
Judicial Secretary